**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Teamsters Local Union No. 100, )
)
      Plaintiff, ) Case No. 1:15-CV-199
)
vs. )
)
First Student, Inc., )
)
      Defendant. )

O R D E R

This matter is before the Court on Plaintiff Teamsters Local Union No. 100's amended motion to vacate arbitrator's award (Doc. No. 4). For the reasons that follow, Plaintiff's motion is not well-taken and is **DENIED.**

I. Background

Teamsters Local Union No. 100 ("the Teamsters") is the collective bargaining representative for the school bus drivers, monitors, lot-men and dispatchers who are employed by Defendant First Student, Inc. ("First Student"). In this case, the Teamsters ask the Court to vacate an arbitrator's interpretation of the collective bargaining agreement in effect for the period July 1, 2013 to June 30, 2016 ("the 2013 CBA"). Specifically, the Teamsters object to the arbitrator's interpretation of Section 47 of the 2013 Agreement, which sets forth the applicable wage rates.

As explained by the arbitrator, Article 47 establishes sixteen annual wage steps. It also provides a specific rate for a New Hire. Under the 2013 CBA, an employee who works at least one day during the regular school year at the New Hire rate receives a year of

service for purposes of the wage scale and is eligible to advance to the next wage step. In other words, there are actually seventeen pay levels, but, somewhat counter-intuitively, an employee in his second year of service will be paid at the Year 1 Rate (because the first year of employment was compensated at the New Hire rate).  An employee in his third year of service will be paid at the Year 2 rate, and so forth.  Doc. No. 2-3, at 25.

The prior CBA ("the 2009 CBA) had only three wage rates.  New hires under the 2009 CBA were also paid at the New Hire Rate.  Also like the 2013 CBA, new employees with at least one day of service during the school year were eligible to advance to the next wage rate.  Under this agreement, employees in their second year of service were paid at the Second Year Rate.  Employees remained at the Second Year Rate until they completed seven years of service, at which time they advanced to the Eighth Year Rate.  Employees then remained at the Eighth Year Rate for the remainder of their service.  Doc. No. 2-3, at 78.

The dispute between the Teamsters and First Student centered on First Student's treatment of existing employees when the 2013 CBA went into effect.  First Student decided that the year after the New Hire Year would be Year 1 on the wage scale.  Thus, for example, according to First Student's determination, under the new agreement, an employee in his fifth year of service, including the hire year, would be paid at the Year 4 rate.  The union members, however, thought that this interpretation cheated them out of a year of service on the wage scale.  They contended that under the new CBA, an employee in his fifth year of service should be compensated at the Year 5 rate.

The parties' dispute over the new wage rates proceeded to arbitration.  In support of its interpretation of the new CBA before the arbitrator, the Teamsters focused on the fact

2

that during negotiations, First Student agreed to delete the word "after" from a proposed draft of the new wage scale. In the draft proposal, the first year was paid at the New Hire rate, the second year rate was denominated "After 1 year," the third year rate was denominated "After 2 years," and so on. Doc. No. 2-4, at 51. The union membership, refused to ratify the proposed wage scale because of the word "after." The members thought that the word "after" created confusion and would result in delaying progression to the next wage step by one year. After further negotiations, First Student agreed to delete "after" from the wage scale and the membership ultimately ratified the amended wage scale. The Teamsters argued that First Student was improperly trying to use arbitration to put back into the CBA a term it had surrendered during negotiations. First Student's position was that it agreed to eliminate the word "after" from the wage scale only in order to eliminate confusion but that this amendment did not otherwise result in a substantive change in the manner in which the new wage scale would be applied.

The arbitrator agreed with First Student in his award. He agreed that there was some merit to the Teamsters' argument that an employee in his fifth year of service should be compensated at the Year 5 rate. He noted further, however, that the Union could have drafted the wage scale so that the year after the New Hire year was Year 2. The arbitrator also noted that accepting the Teamsters' position would permit employees who worked one day in the New Hire Year to completely bypass the Year 1 wage rate and advance to the Year 2 wage rate. The arbitrator rejected this position, however, because there is no provision in the CBA to treat existing employees differently from newly hired employees.

The arbitrator determined, rather, that the wage rate chart provided the best expression of the parties' intent concerning application of the wage rates. The arbitrator

3

concluded that the chart provided a graphical representation of an employee's progression through the wage scales, i.e., the employee is paid at the New Hire rate in the year of hire and advances one step on the chart at the beginning of the new school year until he reaches the maximum wage. The arbitrator also concluded that nothing in the CBA requires the employer to deviate from those steps when assigning wage rates. Finally, the arbitrator concluded that First Student properly advanced existing employees to the new wage step for the new school year in 2013 and that no employee lost a year of service under the wage chart when the new CBA went into effect. Therefore, the arbitrator concluded, First Student did not violate the CBA. Doc. No. 4-1, at 11-15.

The Teamsters now move the Court to vacate the arbitrator's award. The Teamsters contend that the arbitrator acted outside the scope of his authority by inserting provisions into the CBA which do not otherwise appear and that he ignored the clear and unambiguous language of the contract. First Student, however, contends that the Teamsters' motion is frivolous because the arbitrator clearly engaged in interpreting the CBA when he issued his award and, hence, the Teamsters have not presented any reasonable for basis for vacating his award.

The Teamsters' motion to vacate the arbitrator's award is now ready for disposition by the Court.

## II. Standard of Review

A federal court's review of an arbitrator's award is significantly circumscribed. The court's task is to determine whether the arbitrator's decision "draws its essence from the contract." Michigan Family Res., Inc. v. Service Emp. Int'l Union Local 517M, 475 F.3d 746, 752 (6th Cir. 2007). If the arbitrator was "even arguably construing or applying the

4

contract," the award must be confirmed. Id. "Only when the arbitrator strays from interpretation and application . . . does he enter the forbidden world of effectively dispensing his own brand of industrial justice, making the arbitrator's decision unenforceable." Id. (quoting in part Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001)) (internal brackets and quotation marks omitted). The Sixth Circuit explained further that:

> The [Supreme] Court's repeated insistence that the federal courts must tolerate "serious" arbitral errors suggests that judicial consideration of the merits of a dispute is the rare exception, not the rule. At the same time, we cannot ignore the specter that an arbitration decision could be so ignorant of the contract's plain language as to make implausible any contention that the arbitrator was construing the contract. An interpretation of a contract thus could be so untethered to the terms of the agreement . . . that it would cast doubt on whether the arbitrator indeed was engaged in interpretation. Such an exception of course is reserved for the rare case. For in most cases, it will suffice to enforce the award that the arbitrator appeared to be engaged in interpretation, and if there is doubt we will presume that the arbitrator was doing just that.
>
> . . .
>
> This view of the "arguably construing" inquiry no doubt will permit only the most egregious awards to be vacated. But it is a view that respects the parties' decision to hire their own judge to resolve their disputes, a view that respects the finality clause in most arbitration agreements . . . and a view whose imperfections can be remedied by selecting better arbitrators.

Id. at 753-54 (internal citations, brackets and quotation marks omitted). Thus, the reviewing court cannot vacate the arbitrator's award even if he made "serious, improvident, or silly errors in resolving the merits of the dispute." Id. at 753 (internal quotation marks omitted). Similarly, the reviewing court cannot reverse the arbitrator's decision based on mistakes of fact or law, Beacon Journal Pub. Co. v. Akron Newspaper Guild Local No. 7, 114 F.3d 596, 599 (6th Cir. 1997), or because the arbitrator misinterpreted federal law.

5

Anaconda Co. v. District Lodge No. 27 of the Int'l Ass'n of Machinists, 693 F.2d 35, 37-38 (6th Cir. 1982).

A federal court, rather, will only review an arbitrator's award for "procedural aberrations." That review is limited to considering: 1) whether the arbitrator acted outside the scope of his authority by not resolving a dispute committed to arbitration; 2) whether the arbitrator committed fraud, had a conflict of interest, or otherwise acted dishonestly in issuing the award; and 3) whether the arbitrator arguably construed and applied the contract in resolving disputed factual and legal questions. Truck Drivers Local No. 164 v. Allied Waste Sys., Inc., 512 F.3d 211, 216 (6th Cir. 2008). If the arbitrator did not violate any of these requirements, his award must be affirmed even if the court believes the arbitrator was seriously mistaken in resolving the merits of the dispute. Id.

### III. Analysis

In this case, it is clear that the Court cannot vacate the arbitrator's award.

First, the Teamsters wrongly contend that the arbitrator acted outside the scope of his authority in issuing his award. An arbitrator acts outside the scope of his authority only when he decides an issue that the collective bargaining agreement does not commit to arbitration. Truck Drivers, 512 F.3d at 217. Here, however, the Teamsters do not contend that the CBA did not permit the arbitrator to decide disputes concerning the application of the wage scale. The Teamsters do argue that the arbitrator added the term "after" back into the wage scale in violation of the 2013 CBA. See CBA Art. 12 (Doc. No. 2-3, at 30) ("The power of the arbitrator shall be limited to the interpretation of the Agreement. He shall have no power to add or subtract from or modify any of this Agreement, nor shall he have power to establish or change any wage scale or classification."). The arbitrator plainly

6

did not add the word "after" back into the 2013 CBA. Instead, he concluded that the removal of the word "after" from the final draft of the 2013 CBA was a non-substantive change to the agreement. In support of that conclusion, the arbitrator observed that the wage rates did not change and that the new wage chart contained seventeen wage steps both before and after the removal of the word "after." Doc. No. 4-1, at 15. The arbitrator's award, therefore, shows that he was engaged in contract interpretation and did not act outside the scope of his authority in rendering his award.

Second, and finally, the arbitrator's decision clearly draws its essence from the CBA. The arbitrator's award shows that he cited the applicable article of the CBA, that he reviewed the wage scale provisions, and that he reached logical conclusions concerning the correct application of the wage scale. For instance, the arbitrator noted that the wage chart graphically demonstrates an employee's progression throughout each wage step and concluded that, because of the New Hire rate, an employee in his second year of employment is paid at the Year 1 rate, that an employee in his third year of employment is paid at the Year 2 rate, and so forth. Applying that logic, the arbitrator then concluded that First Student did not deny any existing employee of a year of service under the wage chart. Not only is the arbitrator's decision not "untethered from the agreement," it is arguably the only reasonable and correct interpretation of the CBA. Doc. No. 4-1, at 16-17. Compare with Michigan Family Res., 475 F.3d at 754 ("The arbitrator's ten-page opinion has all the hallmarks of interpretation. He refers to, quotes from and analyzes the pertinent provisions of the agreement, and at no point does he say anything indicating that he was doing anything other than trying to reach a good-faith interpretation of the contract.").

Accordingly, the Teamsters' amended motion to vacate the arbitrator's award is not well-taken and is **DENIED.**  The Teamsters' complaint for review of the arbitrator's decision is **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED**

Date May 26, 2015                                                  s/Sandra S. Beckwith
                                                                                    Sandra S. Beckwith
                                                                                    Senior United States District Judge